Michael McCULLOUGH,
Plaintiff–Appellee,

v.

WYANDANCH UNION FREE SCHOOL DISTRICT, The Board of Education of the Wyandanch School District, Dr. Anthony Pecorale, Individually and as Interim Superintendent, Defendants–Appellants,

Dr. Richard Ross, Individually and as Superintendent, Defendant.

No. 98–7274.

United States Court of Appeals, Second Circuit.

Argued Oct. 9, 1998.

Decided July 30, 1999.

Richard C. Hamburger, Melville, N.Y. (David N. Yaffe, Hamburger, Maxson & Yaffe, Melville, NY, of counsel), for Defendants–Appellants.

Alan C. Stein, Law Office of Alan C. Stein, Manhasset, NY, for Plaintiff–Appellee.

Before: PARKER and SACK, Circuit Judges, and SEAR*, District Judge.

PARKER, Circuit Judge:

Appellants Wyandanch Union Free School District, the Wyandanch Board of Education, and Anthony Pecorale, interim superintendent, appeal from an order of the United States District Court for the Eastern District of New York (Thomas C. Platt, *Judge*) entered January 21, 1998, denying appellants' motion for summary judgment. Appellants terminated appellee from his position as assistant superintendent. Appellee sued under 42 U.S.C. § 1983, claiming that the termination violated the First Amendment because it was motivated by public statements appellee had made about the operation of the school district. Appellee also claimed that materials in his personnel file unconstitutionally stigmatized him in violation of the Due Process Clause of the Fourteenth Amendment. The district court denied appellants' motion for summary judgment on both claims. The district court also denied appellant Pecorale's summary judgment motion seeking qualified immunity on both claims.

## I. BACKGROUND

On November 2, 1992, appellee was appointed Assistant Superintendent for Curriculum and Instruction of the Wyandanch Union Free School District. Appellee was an at-will employee hired for a three-year

---

* The Honorable Morey L. Sear, Chief Judge of the United States District Court for the East- ern District of Louisiana, sitting by designation.

probationary term. He was, however, eligible for tenure if he completed three successful years in the position.

Within the school district administration, appellee's position was subordinate only to the school district superintendent, to whom appellee reported directly. Among appellee's responsibilities, as set forth in his official job description, were the duties to develop new curriculum, to assist in the formulation of educational philosophy and objectives, and to communicate approved curriculum and philosophy to the school board, district administration and staff, and the general public. From the start of his appointment, appellee regularly opined that the lack of leadership within the school district caused students to receive a below average education. For example, appellee stated that students were not kept under control, that test scores were being manipulated, that high school credit requirements were not adhered to, that no standard for grading existed, that principals lacked the ability to direct their staffs, and that the school leadership lacked a "clear mission" and did not keep apprised of developments in the field of education. Appellee made these and similar statements at bi-monthly school board meetings and at regularly scheduled school-wide meetings. He made comments to board members, senior administrators, parents of students, and members of the general public. In February 1995, he expressed his opinions on a radio talk show.

In moving for summary judgment, appellants proffered evidence, uncontroverted by appellee, that appellee's speech caused disruption in the school district. Specifically, the speech caused hostility between appellee and various district employees, including principals and teachers. One principal asked to be relieved of the obligation to work with appellee. Moreover, appellants proffered, again without contravention, that appellee's statements were "likely to cause tremendous disruption to the functioning of the School District" because the comments were "contrary to the goals established by the Board of Education."

Over the course of his employment, appellee received a number of written censures and negative evaluations directed at his job performance. None of the negative evaluations referred to the disruptive statements made by appellee.

On May 8, 1995, Pecorale notified appellee that Pecorale would recommend to the board of education that appellee's appointment be terminated. On June 21, 1995, (appellee having served for two and one-half years) the board terminated him.

On December 1, 1995, appellee sued the board of education, the school district, superintendent Richard Ross, and Pecorale under 42 U.S.C. § 1983. As amended, the complaint raised two claims: that appellee was terminated for exercising his First Amendment right to speak out on the administration of the district's schools, and that the negative evaluations discussed above contained stigmatizing allegations that deprived or threatened to deprive appellee of liberty without due process of law. The claims against Ross were subsequently dismissed.

On October 30, 1996, the documents alleged by appellee to contain unconstitutionally stigmatizing statements were permanently removed from appellee's personnel file. According to Assistant Superintendent Calvin Wilson, the documents are being kept by the school district's attorney. Wilson has instructed human resources personnel to respond to inquiries by prospective employers of appellee by revealing only the dates of appellee's employment and his salary. Wilson asserts that none of the allegedly stigmatizing statements have been made public. Appellee conceded at his deposition that he had no "written information" that the materials had been made public. Appellee testified that he "ha[s] a sense" that the materials have been disclosed, because professionals in this field have "a

tendency to share information that should not be shared."

After discovery was completed, appellants moved for summary judgment. On the First Amendment claim, appellants argued that appellee's speech was not protected. On the Due Process claim, appellants argued primarily that the undisputed evidence showed that there was no likelihood that the allegedly stigmatizing allegations against appellee had been or ever would be disclosed. Additionally, Pecorale argued that he was entitled to qualified immunity on both claims.

## II. DISCUSSION

### A. *Jurisdiction*

█ Appellee argues that we lack jurisdiction over this appeal because the qualified immunity issues raised by Pecorale turn on disputed issues of fact. The district court's denial of the qualified immunity defense on a summary judgment motion is an appealable final decision to the extent that the denial turns on an issue of law. *Genas v. State of N.Y. Correctional Services,* 75 F.3d 825, 830 (2d Cir.1996). As the discussion that follows will show, the material facts are undisputed and this is an appeal on "plaintiff's version" of the facts. Thus, the issues presented are questions of law and we have jurisdiction. *See Salim v. Proulx,* 93 F.3d 86, 91 (2d Cir.1996) (appeal lies where it is based on "plaintiff's version" of the facts).

█ The district court held that "a factual issue exists as to whether defendant's action in firing plaintiff comported with the First Amendment." It did not explain, however, how any factual dispute precluded a decision on qualified immunity. Moreover, it is not necessary for a district court to determine whether in fact the First Amendment was violated before deciding whether a defendant is entitled to qualified immunity. As the discussion below shows, the whole point of the qualified immunity defense is to allow a defendant to be dismissed out of the case even if a

right was actually violated (*i.e.,* where it can be shown that the right asserted was not clearly established at the time, or that if the right was clearly established, it was objectively reasonable for the defendant to believe he or she was not violating it).

The same is true of the district court's analysis of the Due Process claim. The district court cited to no facts in the record that actually were disputed. Nor did the district court evince awareness of the fact that Pecorale could be entitled to qualified immunity even if appellee's Due Process rights had been violated.

The school district and the board of education urge us to exercise pendent jurisdiction over their appeal from the denial of summary judgment on the First Amendment and Due Process claims. They argue that the pendent issues with regard to the underlying claims are intertwined with the qualified immunity issues. *See Swint v. Chambers County Comm'n,* 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (indicating that on appeal of qualified immunity issue, court of appeals may reach other issues that are "inextricably intertwined" with qualified immunity issue or that are "necessary to ensure meaningful review" of that issue); *see also Rein v. Socialist People's Libyan Arab Jamahiriya,* 162 F.3d 748, 757 (2d Cir.1998) ("*Swint* did not create an absolute bar to interlocutory appeals of all issues not independently warranting immediate review."), *cert. denied,* —— U.S. ——, 119 S.Ct. 2337, 144 L.Ed.2d 235 (1999).

As the discussion that follows will show, we agree with appellants that there is sufficient overlap in the factors relevant to the appealable and nonappealable issues to warrant exercising pendent jurisdiction over the Due Process claim. *See Freeman v. Complex Computing Co.,* 119 F.3d 1044, 1049–50 (2d Cir.1997) (engaging in pendent interlocutory review where there was "substantial factual overlap bearing on the issues raised"). However, insufficient overlap exists with respect to the First

Amendment issues. Thus, on the First Amendment claim, we reach only the qualified immunity issue.

## B. Standard of Review

We review a district court's ruling on summary judgment de novo, taking all factual inferences in favor of the non-moving party. Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law. Harvis Trien & Beck, P.C. v. Federal Home Loan Mortgage Corp. (In re Blackwood Assoc., L.P.), 153 F.3d 61, 67 (2d Cir.1998).

## C. Qualified Immunity

Pecorale argues that he is entitled to qualified immunity on appellee's First Amendment claim because Constitutional protection of appellee's speech, in these circumstances, was not clearly established and because it was objectively reasonable for Pecorale to believe that his recommendation that appellee be terminated did not violate appellee's First Amendment rights. Similarly, Pecorale argues that he is entitled to qualified immunity on the Due Process claim because it was objectively reasonable for him to believe his actions did not violate appellee's rights.

██ Even when a government agent has fired an employee in apparent violation of the employee's constitutional rights, the agent may be entitled to qualified immunity for his or her conduct. Sheppard v. Beerman, 94 F.3d 823, 827 (2d Cir.1996). A government agent enjoys qualified immunity when he or she performs discretionary functions if either (1) the conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that the conduct did not violate clearly established rights. A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct. The unlawfulness must be apparent. Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir.1998) (citing Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) and Harlow v. Fitzgerald, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

With these qualified immunity principles in mind, we turn to the two claims raised by appellee.

## D. First Amendment

██ To prevail on a Section 1983 claim based on a termination of employment in violation of First Amendment speech rights, a plaintiff must establish (1) that his or her speech can be fairly characterized as speech on a matter of public concern, and (2) that the speech was a substantial or motivating factor in the discharge. Sheppard, 94 F.3d at 827.[1]

██ Nevertheless, even when these two elements are fulfilled, a governmental defendant may escape liability by showing that the speech threatened to interfere with government operations and that the potential disruptiveness was sufficient to outweigh the First Amendment value of that speech. Heil v. Santoro, 147 F.3d 103, 109 (2d Cir.1998). The competing interests that must be balanced are the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an

---

**1.** Appellants do not dispute that appellee's speech was on a matter of public concern. Nor do appellants contend that they would have fired appellee even in the absence of protected speech, a contention that could form an alternative basis for avoiding liability. See Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir.1999), petition for cert. filed, 67 USLW 3007 (U.S. June 17, 1999) (No. 98–2028).

employer, in promoting the efficiency of the public services it performs through its employees. *Pickering v. Board of Education of Township High School District 205, Will County,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Factors important to this *"Pickering* balancing test" include the time, place, and manner of the speech; the content of the speech and the extent to which it touches on matters of significant public concern; and, the nature of the disciplined employee's responsibilities. *Lewis v. Cowen,* 165 F.3d 154, 162 (2d Cir.1999), *petition for cert. filed,* 67 USLW 3007 (U.S. June 17, 1999) (No. 98–2028).

In the context of Pecorale's qualified immunity defense, the question becomes whether appellee had a Constitutionally protected right to speak which was clearly established at the time and, if so, whether it was nevertheless objectively reasonable for Pecorale to believe that he could recommend appellee's termination without violating that right.

■ We need not determine whether appellee's right to speak was clearly established at the time that Pecorale recommended appellee's termination. *Cf. McEvoy v. Spencer,* 124 F.3d 92, 102–03 (2d Cir.1997)(holding that it had not previously been clearly established that an employee who "would qualify as a policymaker within the meaning of the *Elrod* line of cases" would be entitled to *Pickering* protection). Even if the right was clearly established (which we do not hold here), it was nevertheless objectively reasonable for Pecorale to believe that he could recommend appellee's termination without violating the *Pickering* balancing test.

■ High-level employees are entitled to limited *Pickering* protection. In *McEvoy* we noted that employees who hold high-level positions are "unlikely" to prevail under the *Pickering* balancing test when they have engaged in speech that is critical of their employer. In "most cases" of this type, the likelihood of disruption will outweigh the employees' right to speak. *McEvoy,* 124 F.3d at 103.

In this case, appellee held the second highest position in the school district administration. He spoke out in his official capacity on matters that directly related to his employment duties. He repeatedly criticized the operation of the school district and the competence of its employees. Appellants have proffered uncontroverted evidence that appellee's speech disrupted the operation of the school district. On these facts, it was objectively reasonable for Pecorale to conclude that recommending appellee's termination would not violate appellee's First Amendment rights. *See Giacalone v. Abrams,* 850 F.2d 79, 86, 88 (2d Cir.1988) (finding defendants entitled to qualified immunity where "the *Pickering* balance did not tip in [plaintiff's] favor so clearly that his superiors can properly be said to have forfeited" immunity); *cf. Lewis,* 165 F.3d at 165 ("[A] public employer's interests in running an effective and efficient office are given the utmost weight where a high-level subordinate insists on vocally and publicly criticizing the policies of his employer."); *Kaluczky v. City of White Plains,* 57 F.3d 202, 210 (2d Cir.1995) ("[N]either the Constitution nor the *Pickering* balancing test requires a public employer to entrust an adversary or critic with a sensitive, confidential or policy role.").

In denying Pecorale's summary judgment motion seeking qualified immunity the district court stated as its reason that "a reasonable School Superintendent could have believed that Dr. McCullough's termination ... did in fact violate his First Amendment rights." This is simply the wrong standard. The issue is not what Pecorale "could have believed," it is rather whether it was objectively reasonable for him to believe that termination would *not* violate any Constitutionally protected right of speech. As we said earlier we so hold.

■ Appellee argues that a genuine issue of material fact exists as to appellants' subjective motivation for recom-

mending appellee's termination, thus precluding qualified immunity for Pecorale. Appellee contends that he was terminated not because of the disruption to the workplace caused by his speech, but because appellants sought to retaliate against his speech. *See Lewis*, 165 F.3d at 163 ("[E]ven if the *Pickering* balance is resolved in the employer's favor, the employee may still demonstrate liability by proving that the employer disciplined the employee in retaliation for the speech, rather than out of fear of the disruption."). This argument is without merit.

■ Appellee has proffered no evidence that Pecorale retaliated against him. *See Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998) (to defeat properly supported summary judgment motion, plaintiff must identify "affirmative evidence" from which jury could find that defendant engaged in unconstitutional retaliation). Where there is a "total absence of evidence of retaliation," there is no basis on which to conclude that the defendant seeking qualified immunity violated clearly established law. *Gubitosi v. Kapica*, 154 F.3d 30, 33 (2d Cir.1998); *see Salim*, 93 F.3d at 90 ("[D]efendant's claim that he 'didn't do it' [is] within the scope of the qualified immunity defense.").

Although we have previously noted that the timing of a defendant's conduct may be circumstantial evidence of a retaliatory motive, *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995), no such inference of retaliation may be drawn here. Appellee argues that his only formal evaluation—which was resoundingly negative—was conducted by Pecorale within a month of appellee's termination, thereby giving rise to an inference of retaliation. According to appellee, the evaluation is part of a "paper trail" Pecorale created to justify recommending appellee's termination.[2] When scrutinized, the negative evaluation bears no temporal proximity to the speech

that would support a reasonable inference of retaliation. For the purposes of summary judgment, it is undisputed that appellee's speech was a factor in his termination and that appellee engaged in the speech over the entire course of his employment, not merely prior to the negative evaluation. These facts render unremarkable any temporal connection between any particular speech by appellee and the negative evaluation. On the record presented, no reasonable juror could infer from the timing of the evaluation that the termination resulted from a retaliatory motive rather than a lawful motive to stem the disruption caused by the speech. *Cf. Gubitosi*, 154 F.3d at 33 (reversing denial of qualified immunity where it was "simply impossible to miss" evidence that eliminated inference that timing of defendant's conduct was evidence of retaliation).

The evaluation's potential to create an inference of retaliation rests not on its timing, but on its content, which appellee asserts is a lie. However, appellee cannot defeat summary judgment on a retaliation claim merely by impugning Pecorale's honesty. *See Crawford–El*, 118 S.Ct. at 1598 (general attacks upon the defendant's credibility are not sufficient to defeat properly supported summary judgment motion). Nor can he defeat summary judgment by promising in his appellate brief that "[a]t trial" he will "demonstrate[ ]" how the evaluation is false.

## E.  Due Process

### 1.  Pecorale and qualified immunity

■ A governmental employee's constitutionally protected liberty interest is implicated when the government, in terminating the employee, imposes upon the employee a stigma which restricts his or her ability to obtain future employment. If there is public disclosure of stigmatizing allegations—or if the plaintiff demon-

---

**2.** Although not dispositive of the issue, appellee's argument ignores the fact that documents censoring his conduct are dated as early as October 1993 and were generated not only by Pecorale, but also by Pecorale's predecessor, Ross.

strates a likelihood of future disclosure-then the plaintiff must be afforded an opportunity to be heard and to clear his or her name. *Brandt v. Board of Coop. Educ. Servs.*, 845 F.2d 416, 417 (2d Cir. 1988).

■ The record in this case contains uncontroverted evidence that the allegedly stigmatizing allegations have never been made public, and that, at Wilson's direction, the material has been permanently removed from appellee's personnel file. Additionally, Wilson has instructed school district personnel not to reveal the substance of the allegedly stigmatizing information to prospective employers. The record indicates that Pecorale has ratified Wilson's remedial measures. Appellee has proffered no evidence beyond his own speculation that the allegedly stigmatizing allegations were disclosed or are likely to be disclosed. Appellee's only response to the absence of evidence is to assert that he "will testify at trial how he became aware" of unspecified disclosures.

■ The district court relied on *Velger v. Cawley*, 525 F.2d 334 (2d Cir.1975), *r'vd on other grounds sub nom., Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), to deny summary judgment on the stigmatization claim. In *Velger*, the employer left the allegedly stigmatizing materials in the employee's personnel file and responded to inquiries for permission to see the file with the statement that permission would be granted with the former employee's consent. *Velger* noted that this policy put the former employee in the untenable position of denying a potential future employer the opportunity to look in his personnel file. *Velger*, 525 F.2d at 336. By citing *Velger*, the district court focused on the issue of whether appellants' policy of providing limited information to prospective employers was itself stigmatizing. No evidence supported this approach. No evidence has been presented as to whether any potential employers have contacted the school district seeking access to the personnel file, or as to as to how

potential employers did react—or would be expected to react—to the limited information disclosed by appellants. Indeed, appellee admitted at his deposition that he does not know what information potential employers have sought or will seek from the school district. Nothing in the record supports the conclusion that appellants' limited disclosure policy will be a factor in appellee's future attempts to gain employment.

It bears noting that although the district court raised the issue in its opinion by citing *Velger*, appellee had not previously argued that appellants' limited disclosure policy was objectionable. Instead, appellee's sole argument below was directed at the (unsupported) claim that disclosure of the actual documents had already occurred or was likely to occur. It is thus unsurprising that although he adds the district court's reasoning to his appellate brief, appellee is unable to locate any evidence in support of this newly found theory.

On these undisputed facts, it was objectively reasonable for Pecorale to believe that at the critical juncture of this case-the date the materials were permanently removed from the personnel file, prior to any public disclosure-the necessary steps had been taken to prevent disclosure of the allegedly stigmatizing documents. Pecorale is therefore entitled to qualified immunity. *Cf. Brandt*, 845 F.2d at 417–18 (affirming grant of summary judgment where allegedly stigmatizing allegations had been removed from plaintiff's personnel file, thus eliminating any likelihood that plaintiff would be denied future job opportunities because of the allegations; plaintiff had made no showing that any disclosure had occurred or was likely to occur).

### 2. *The remaining appellants*

■ There is sufficient overlap between the qualified immunity issue and the issue raised by the remaining appellants to justify pendent interlocutory review of the

remaining appellants' appeal on the Due Process claim. *See Freeman,* 119 F.3d at 1049–50.

Sufficient overlap exists because no additional inquiry or analysis is necessary to conclude that no genuine issue of material fact remains for trial on this claim against the remaining appellants. The patent and complete absence of evidence on an essential element of the underlying Due Process claim-namely that disclosure of the allegedly stigmatizing allegations either has occurred or is likely to occur-convinces us both that pendent interlocutory review is warranted and that the remaining defendants are entitled to summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (summary judgment warranted where there exists "a complete failure of proof concerning an essential element of the nonmoving party's case").

## III.  CONCLUSION

The decision of the district court is REVERSED in part and REMANDED. We reverse the district court's denial of qualified immunity to Pecorale and find that Pecorale is entitled to qualified immunity on both claims. We reverse the district court's denial of summary judgment to the remaining appellants on the Due Process claim. We decline to exercise pendent jurisdiction over the remaining appellants' appeal from the denial of summary judgment on the First Amendment claim. Costs allowed to Pecorale.