**Ronald BENSON**

v.

**Dennis DANIELS and The City of New Haven**

**No. 3:98CV1290(DJS).**

United States District Court, D. Connecticut.

March 21, 2000.

W. Martyn Philpot, Jr., Laura Lee A. Dorflinger, Amy E. Johnson, Law Office of Martyn Philpot, New Haven, CT, for Ronald Benson, plaintiff.

Thomas W. Ude, Jr., Audrey Claire Kramer, Office Of Corporation Counsel, City Of New Haven, New Haven, CT, for Dennis Daniels, I/O, City of New Haven, defendants.

### RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SQUATRITO, District Judge.

Pursuant to 42 U.S.C. § 1981 and § 1983, the plaintiff claims, *inter alia,* that the defendants' act of suspending of him from his duties of as a New Haven City fireman violated his rights under the First and Fourteenth Amendments to the United States Constitution.

Now pending before the Court is the defendants' motion for summary judgment on all counts pursuant to Fed. R. Civ. Pro. 56. For the reasons that follow, the defendants' motion is **GRANTED IN PART** and **DENIED IN PART.**

### I. Facts

For the last twenty years, the plaintiff has been employed by the City of New Haven as a fireman. He is the president of the Firebirds Society of New Haven, an association of African–American and Hispanic firefighters in New Haven. Historically, this organization has taken the position that the New Haven Fire Department fails to adequately hire or promote minority firefighters.

In January 1998, the plaintiff and two other firefighters appeared on "The Diane Payton Show," a talk show aired on local public access television. Throughout the show the plaintiff, while wearing his fireman's uniform, repeatedly criticized the New Haven Fire Department for not hiring or promoting a sufficient number of minority candidates.

On February 2, 1998, defendant Dennis Daniels, the chief of the New Haven Fire Department issued "General Order Number 1." This ordered indicated that "any [d]epartment member found to be guilty of conduct in any manner that is to discredit, to be disrespectful or to be offensive to any member of the Board of Fire Commissioners shall be subject to disciplinary action."

On March 9, 1998, the plaintiff appeared at a second step grievance hearing before the Labor Relations Committee of the Board of Firemen on matter not directly related to the instant case. After the plaintiff allegedly made several disrespectful statements to members of the Labor Relations Committee, chairperson Linda Pascale adjourned the meeting early.

On March 11, 1998, Pascale sent a letter to Chief Daniels, who was also at the meeting, explaining that the reason the meeting was adjourned early was because the plaintiff was repeatedly disrespectful to the committee, in violation of General Order 1. In her letter to Chief Daniels, Pascale provided several specific examples of actions that she considered to be disrespectful.

On March 12, 1998, Chief Daniels ordered the plaintiff to report to his [Daniel's] office at 1:00 p.m. on the following day. When the plaintiff failed to report as ordered, Daniels consulted with the city attorney and then suspended the plaintiff for ten days for his conduct at the grievance hearing, his failure to report to Chief Daniels under order and for conduct occurred "throughout the month of January." New Haven Department of Fire Service, General Order Number 3

On July 6, 1998, the plaintiff filed this action.

## II. Legal Standard for Summary Judgment

A motion for summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate if, after discovery, the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *American Int'l Group. Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus., Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975)). A dispute concerning a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). The court must view all inferences and ambiguities in a light most favorable to the non-moving party. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

## III. Discussion

### A. Section 1983 claims

### I. First Amendment

The defendants argue that the plaintiff's comments are not Constitutionally protected because he was not speaking as a private citizen. They claim that because the plaintiff wore his uniform, he was speaking as an employee of the New Haven Fire Department. Alternatively, the defendants contend that even if the plaintiff's speech was protected, the disciplinary action was warranted since Benson's comments were likely to cause disruption to the operation of the Fire Department.

The plaintiff responds that his speech was made as a private citizen. Further, he argues that his speech was not likely to disrupt the New Haven Fire Department's ability to carry out its professional mission.

It is well established that to prevail on a First Amendment claim, the

plaintiff must show both that the speech at issue was Constitutionally protected and that it was a substantial or a motivating factoring in the defendant's adverse employment action. *See Board of County Comm'rs v. Umbehr,* 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). To satisfy the first prong of this test, the plaintiff must establish that his speech was made in his role as a private citizen, not as an employee, and touched on a public concern. *See Kirkland v. Northside Independent School District,* 890 F.2d 794, 798 (5th Cir.1989). "The determinative question is whether [the speaker's interest in the matter of public concern] arises from the speaker's status as a public citizen or from the speaker's status as a public employee." *Blum v. Schlegel,* 18 F.3d 1005, 1013 (2d Cir.1994).

■ To determine whether an employee's comments were made as a citizen and touch on a public concern, courts must evaluate all aspects of the speech. "Whether employee speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." *Rankin v. McPherson,* 483 U.S. 378, 384–5, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *see also Lewis v. Cowen,* 165 F.3d 154, 163–4 (2d Cir., 1999)(to decide whether an employee's speech involves a matter of public concern, a court should focus on the motive of the speaker).

■ Even if a plaintiff's speech is protected by the First Amendment, the Court must then "balance the interests of the [employee], as a citizen, in commenting on matters of public concern with the interests of the state, as an employer, in promoting the efficiency of the public services it performs." *Pickering v. Bd. of Educ.,* 391 U.S. 563, 569, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). An employer is not required to permit speech that "impedes an employee's performance of his duties or that interferes with the proper functioning of the workplace." *Id.* at 568, 88 S.Ct. 1731. "A government defendant may escape liability by showing that the speech

threatened to interfere with government operations and that the potential disruptiveness was sufficient to outweigh the First Amendment value of that speech." *McCullough v. Wyandanch Union Free School District,* 187 F.3d 272, 1999 WL 592250 (2d. Cir.1999); *see also Heil v. Santoro,* 147 F.3d 103, 109 (2d. Cir.1998). Additionally, the government may not be liable if it can show by a preponderance of the evidence that it would have taken the same actions even in the absence of the protected conduct. *See Thomsen v. Romeis* 198 F.3d 1022, 1027 (7th Cir.2000).

■ In this case, after evaluating the content, form and context of the plaintiff's speech, it is apparent that his comments on the public access television program were made as a private citizen and are protected by the First Amendment. The plaintiff appeared as a guest on a public access television program to state that the New Haven Fire Department does not treat minorities equally. As a member of the "Firebirds" he was interviewed on the show during his own time and expressed his opinion that minorities have been and are continuing to be treated unfairly. Indeed, this is the very type of speech that the First Amendment was designed to protect. "Government employees are often in the best position to know what ails the agencies for which they work; public debate may gain much from their informed opinions." *Waters v. Churchill,* 511 U.S. 661, 674, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994). The fact that Benson wore his uniform while being interviewed does not transform his private comments into those of an employee. *See Latino Officers Association v. City of New York,* 196 F.3d 458, 468 (1999)(police department's prohibition against members of the Latino police officers' association from marching in uniform in an ethnic pride parade could not survive First Amendment scrutiny based on department's contention that the public was likely to believe that the department itself was speaking).

Furthermore, application of the *Pickering* balancing test indicates that Benson's actions can not be construed to have jeopardized or impeded the Fire Department in carrying out its mission. Benson is employed as a fireman and has no supervisory responsibilities or authority within the New Haven Fire Department. While it is true that "high level employees are entitled to limited *Pickering* protections," Benson is not a high level employee. *McCullough v. Wyandanch Union Free School Board,* 187 F.3d 272, 278–79 (1999). The defendants present no credible argument that Benson's comments either impeded the performance of his duties or interfered with the proper functioning of the workplace.

■ Finally, applying the legal standards delineated above, the Court concludes that the plaintiff's comments made at the grievance hearing are *not* protected speech. Unlike the comments made on the television program, the speech at the grievance hearing was specifically directed at a employment situation in which he was personally involved. These comments were made in his role as an employee, not as a citizen, and are not protected by the First Amendment.

Therefore, the Court concludes that only the comments Benson made on the television program constitute protected speech.

### 2. Qualified Immunity

The defendants next argue that Chief Daniels is entitled to qualified immunity because his conduct did not violate clearly establish statutory or constitutional rights of which a reasonable person would have known.

The plaintiff responds that it was not objectively reasonable for Daniels to believe that the plaintiff's speech was not protected by the First Amendment. In his brief, Benson places considerable emphasis on the fact that General Order No. 1 was issued by Chief Daniels after Benson appeared on the television show, arguing that it can not be an objectively rea-sonable act to discipline him in an ex post facto manner.

"[G]overnment officials are entitled to some form of immunity from suits for damages" in order to "shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). High executives, in particular, enjoy qualified immunity because of "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). "Judgments surrounding discretionary action almost inevitably are influenced by the decisionmaker's experiences, values, and emotions," and should, therefore, be protected. *Harlow,* 457 U.S. at 816, 102 S.Ct. 2727. "Officials should not err always on the side of caution" because of their fear of lawsuits. *Davis,* 468 U.S. at 196, 104 S.Ct. 3012; *see also Wood v. Strickland,* 420 U.S. 308, 319, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

■ However, qualified immunity is not applicable if an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Wood,* 420 U.S. at 322, 95 S.Ct. 992. If the government official's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known," then he will not be afforded qualified immunity. *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727; *see also Procunier v. Navarette,* 434 U.S. 555, 562, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Genas v. State of New York Dep't of Correctional Serv.,* 75 F.3d 825, 830 (2d

Cir.1996); *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991); *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989).

 In order to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034. To determine whether a right was clearly defined at the time the defendant acted, courts should consider (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his acts were unlawful. *Doe v. Phillips,* 81 F.3d 1204, 1211 (2d Cir.1996) (quoting *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir. 1993)).

 In this case, Daniels disciplined Benson for his conduct at the grievance hearing, his failure to report to Chief Daniels under order, and for conduct occurred "throughout the month of January." New Haven Department of Fire Service, General Order Number 3. While Chief Daniel's order does not identify the specific behavior in January for which Benson was disciplined. Daniel's candidly admits in his affidavit that the cited behavior was Benson's "statements during his appearance on the [t]elevision [p]rogram." Daniels Aff. ¶ 14. This admission is significant, because the plaintiff may not have had a sustainable cause of action under any legal theory if he had been only disciplined for his actions at the grievance hearing and for insubordination. These events did not involve protected speech and Daniels may have been well within his legal authority if he had solely disciplined Benson for these two acts. However, the fact that the defendant admits that the discipline was based in part on Benson's appearance on the television show, which is protected speech, substantially changes the landscape of this case.

A reasonable jury could conclude that it was objectively reasonable for Chief Daniels to have known that Benson's speech on the television program was Constitutionally protected. Benson is a African American firefighter who historically has challenged the hiring and promotion practices of the New Haven Fire Department. On "The Diane Payton Show," he publicly stated his opinion that racial bias existed in employment decisions of the New Haven Fire Department. Benson made these statements while off duty and clearly intended that they be transmitted to the public. His comments addressed the state of alleged racism within the department as a whole, and did not solely focus on a particular personal grievance he had with the department. The right of an government employee to speak freely as a private citizen on matter of public concern is defined with reasonable specificity by the Supreme Court. *See United States v. National Treasury Employees Union,* 513 U.S. 454, 465, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995); *Rankin v. McPherson,* 483 U.S. 378, 383–84, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Even though Benson works for the government, he does not relinquish "the First Amendment rights [he] would otherwise enjoy as [a] citizen[ ] to comment on matters of public interest." *Pickering v. Board of Ed. of Township High School Dist.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

In light of these circumstances, the fact that Daniels consulted with a city attorney prior to disciplining Benson does not automatically afford him the legal protections of qualified immunity. A reasonable jury could conclude that Daniels is not shielded by the doctrine of qualified immunity.[1]

---

1. The Court notes that it does not premise its decision on the plaintiff's contention that

Daniels disciplined Benson in an ex post facto manner, since it is not readily apparent that

Therefore, because material facts are in dispute as to whether (1) Benson's speech on "The Diane Payton Show" was a substantial or motivating factor in Daniel's disciplinary action, (2) whether the defendants can avoid liability by showing that they would have taken the same actions even in the absence of the protected conduct, and (3) whether Daniels is protected by the doctrine of qualified immunity, the defendants' motion for summary judgment on the § 1983 and related state claims must be denied.

### B. Section 1981 Claims

The defendants next argue that summary judgment is proper for the plaintiff's claims brought pursuant to 42 U.S.C. § 1981 because there are no allegations that the disciplinary actions were premised on the plaintiff's race.

The plaintiff replies that his § 1981 claim is based on the defendants' retaliation for his comments on the public access television program.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts as enjoyed by white citizens." 42 U.S.C. § 1981. An allegation that a employer retaliated against a plaintiff who has stated a cognizable § 1981 is permissible. *See Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38, 42 (2d. Cir.1984). However, to defeat a motion for summary judgment for claims of discriminatory retaliation, the plaintiff must identify some "affirmative evidence" from which a reasonable jury could conclude that the defendant engaged in unconstitutional retaliation. *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998).

■ In this case, the plaintiff has proffered no evidence whatsoever that the defendants retaliated against him in support of his § 1981 claims. His only mention of retaliation is found in his complaint, and he provides no facts that support this theory. Rather, his § 1983 claims are premised on the theory that Daniels disciplined him directly for his comments on the television show and, as mentioned above, the defendants admit that Benson's discipline was at least in part based on these comments. In his briefs, the plaintiff points to no affirmative evidence that Daniels had an additional retaliatory motive not addressed in his § 1983 claim that would be properly remedied by a § 1981 claim. Therefore, the defendant's motion for summary judgment on the plaintiff's § 1981 claim is granted.

### IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 32) is **GRANTED IN PART** and **DENIED IN PART.** Specifically, summary judgment is granted for Count 1 of the plaintiff's Second Amended Complaint filed on May 25, 1999.

The Court reiterates for the sake of clarity that, as a matter of law, Benson's speech on "The Diane Payton Show" is protected by the First Amendment, while his speech in front of the grievance committee on March 9, 1998 is not protected.

Discovery having closed and the motion for summary judgment having been ruled upon, this matter is deemed trial ready. Accordingly, the parties shall comply with the following orders. Failure to comply herewith shall be grounds for either immediate dismissal or entry of default with prejudice.

1. By **May 15, 2000,** the parties shall file their joint trial memorandum in

---

this assertion is correct. A reading of the of the plain language of General Order 3 indicates Benson's speech on the television program was disciplined pursuant to Rule 1611 and Rule 22, both of which were in effect before the taping of the program. General Order # 1 was used as a basis for disciplining Benson's allegedly disruptive behavior with respect to Commissioner Pascale. It is undisputed that Benson appeared before Pascale after General Order I was issued by Daniels.

**220**

accordance with this court's Joint Trial Memorandum Order previously conveyed to the parties. If the parties cannot agree to the filing of the joint trial memorandum, each party shall file their trial memorandum separately.

2. This matter shall be tried during the month of **June, 2000.** Jury selection shall take place on **May 30, 2000,** beginning at 8:30 a.m.

3. The parties shall appear before the undersigned for a pre-trial conference on **May 25, 2000,** at 4:00 p.m.

4. The parties shall also contact chambers the week beginning **March 26, 2000,** to schedule a settlement conference, which shall not stay the filing of the trial memorandum or the trial of this matter.

5. If any parties or their witnesses are not available for the trial of this matter as indicated, they shall confer with the other parties and so inform the court in writing within 10 days of the filing of this order, with specificity as to the dates and reasons why they are not trial ready.