Michael MCCULLOUGH, Plaintiff,

v.

WYANDANCH UNION FREE SCHOOL DISTRICT, the Board of Education of the Wyandanch School District, Dr. Anthony Pecorale, Individaully and as Interim Superintendent, and Dr. Richard Ross, Individually and as Superintendent, Defendant.

No. 95–CV–04936(NGG).

United States District Court, E.D. New York.

March 2, 2001.

Alan C. Stein, Gastwirth, Mirsky & Stein, LLP, Manhasset, NY, for Plaintiff.

David N. Yaffee, Hamburger, Maxson & Yaffee, LLP, Melville, NY, for Defendants.

## MEMORANDUM AND ORDER

GARAUFIS, District Judge.

### I. Procedural and Factual Background

McCullough initiated this claim pursuant to 42 U.S.C. § 1983 claiming that (1) he was terminated from his position as Assistant to the Superintendent for Curriculum and Instruction in retaliation for comments he made on matters of public concern at various School District meetings, in violation of his First Amendment rights; and (2) that the placement of negative written evaluations in his personnel file at the time of his termination stigmatized him in violation of his Due Process rights.

At the close of discovery, Defendant moved for summary judgment on all of Plaintiff's claims. On January 21, 1998, the Hon. Thomas C. Platt dismissed McCullough's claim for punitive damages against the School District and the Board of Education, but otherwise denied Defendants' motion (the "January 21 Order").

Defendants then filed an interlocutory appeal to the Second Circuit in which defendant Dr. Pecorale (interim Superintendent at the time of the events at issue) sought review of the district court's denial of his request for qualified immunity, and in which the School District and Board of Education defendants sought pendant review of their motion for summary judgment dismissing both claims. Pending its decision, the Second Circuit granted a stay of trial. The Second Circuit reversed the January 21 Order in part, and remanded the matter to the district court. The Second Circuit concluded that Dr. Pecorale was entitled to qualified immunity and dismissed Plaintiff's Due Process claim. The Court of Appeals declined, however, to exercise pendent jurisdiction over Defendants' motion for summary judgment on the First Amendment claim, on the grounds that there was insufficient overlap between the First Amendment claim and the appealable qualified immunity request. See McCullough v. Wyandanch, 187 F.3d 272, 277–78 (2d Cir.1999).

Defendants now argue that this court should reconsider Plaintiff's surviving First Amendment claim in light of the Second Circuit's discussion of the relevant legal standard in its consideration of the qualified immunity issue. Defendant requests in the alternative that we certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). For the following reasons, Defendant's motion for reconsideration is granted, and Plaintiff's remaining claims are dismissed.

The factual background is set forth in detail in both the opinion and order of the district court and in the Second Circuit opinion. Familiarity with those documents is assumed for the purposes of this memorandum and order.

## II. Discussion

### A. Motion for Reconsideration

■ Neither party disputes that interlocutory orders remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims to which they pertain. See, e.g., Parmar v. Jeetish Imports, Inc., 180 F.3d 401 (1999). Upon a thorough review of the opinion of the Second Circuit rendered in connection with this case on July 30, 1999 and after careful scrutiny of the entire record, this court is of the opinion that reconsideration and modification of the memorandum and order entered in this case on January 21, 1998 is warranted. Accordingly, that order is modified as indicated below.

## B. *Pickering* Balancing Test

■ To prevail on a Section 1983 claim based on a termination of employment in violation of First Amendment speech rights, a plaintiff must establish (1) that his or her speech "can be fairly characterized as speech on a matter of public concern," *Connick v. Myers,* 461 U.S. at 146, 103 S.Ct. 1684, and (2) that the speech was "at least a 'substantial' or 'motivating' factor in the discharge." *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1058 (2d Cir.1993) (internal quotations and citations omitted).

■ A governmental defendant may escape liability, however, by showing that otherwise protected speech "would potentially interfere with or disrupt the government's activities" and that "the potential disruptiveness ... outweigh[s] the First Amendment value of that speech." *See, e.g., Heil v. Santoro,* 147 F.3d 103, 109 (2d Cir.1998) (citing *Waters v. Churchill,* 511 U.S. 661, 681, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion)). In deciding whether or not to impose liability upon a state employer on facts such as these, this court must weigh the employee's interest, as a citizen, in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Pickering v. Board of Education of Township High School District 205, Will County,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Factors important to the *Pickering* balancing test include: the time, place, and manner of the speech, the content of the speech and the extent to which it touches on matters of significant public concern, and, the nature of the disciplined employee's responsibilities. *Lewis v. Cowen,* 165 F.3d 154, 162 (2d Cir.1999).

It is assumed for the purposes of the following analysis that Plaintiff's speech touched on important matters of public concern, and would therefore ordinarily be protected under the First Amendment. This assumption comports with Judge Platt's observation that "plaintiff's speeches unquestionably implicate matters of great public concern.... Dr. McCullough addressed significant issues affecting the efficacy of the Wyandanch school system." (Appendix on Appeal 6.)

Under *Pickering* and its progeny, this court is constrained to weigh in the School District's favor the circumstances of the speech at issue and the relative position and authority of the employee. In *Pickering,* the Court reasoned that because teachers are generally in a unique position to assess and form opinions concerning the appropriate disposition of funds allocated to school operations, "it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal." 391 U.S. at 572, 88 S.Ct. 1731. In concluding that teachers enjoy a high degree of First Amendment protection under such circumstances, the court was mindful of the institutional divide separating teachers from high-level administrators responsible for formulating and implementing policies affecting whole school district: "[Pickering's] statements are in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher." *Id.* at 569–70, 88 S.Ct. 1731. Noting that the targets of Pickering's criticisms were his "nominal superiors" and that the "fact of [Pickering's] employment is only tangentially and insubstantially involved in the subject matter" of the remarks on the basis of which he was fired, the Court concluded that "it is necessary to regard the teacher as [a] member of the general public." *Id.* at 574, 88 S.Ct. 1731. Thus, under *Pickering,* in the absence of "the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning," *id.* at 570, 88 S.Ct. 1731, the State's interest in promoting the efficient delivery of its services will typically yield to an employee's interest in his or her right to speak freely on matters of public concern.

■ In this regard, the facts of the present case differ markedly from those of *Pickering.* Plaintiff held a high-level policy position, and it would make little sense to treat his remarks as if they had been made by a member of the general public. As the Supreme Court indicated in *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), "some attention must be paid to the responsibilities of the employee within the agency. The burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails." 483 U.S. at 390, 107 S.Ct. 2891. Plaintiff was hired as the Assistant Superintendent of Curriculum and Instruction for the School District; only the School District Superintendent occupied a superior administrative position. Plaintiff's duties included, *inter alia:* "development and [ ] improvement of the district-wide educational programs throughout the organization, administration, supervision and coordination and evaluation of the programs;" "provided appropriate supervision of administrative and supervisory personnel of the district schools to ensure effective operation;" and "served as a member of the Superintendent's Cabinet and Administrative Staff Council." Plaintiff was also required to "provide staff leadership to ensure understanding of and promote the educational objectives of the district." It is thus beyond doubt that Plaintiff worked as a high-level administrator with a policy-making role and responsibility for implementing the objectives articulated at the highest levels of the School District's administration. Such high-level employees are "unlikely" to prevail under the Pickering balancing test when they have engaged in speech that is critical of their employer. In "most cases" of this type, the likelihood of disruption will outweigh the employees' right to speak. *McEvoy,* 124 F.3d at 103.

Although Plaintiff was highly placed in the School District, he did not hesitate to publicly criticize its employees and highest-level administrators. In his Second Amended Complaint Plaintiff states that "he named which administrators that [sic] he believed failed to provide direction and guidance for the teachers and principals of the School District. Plaintiff singled out, among others, Dr. Anthony J. Pecorale, Interim Superintendent ... as [an] administrator[ ] whose performance had been poor." (Amend. Compl. at ¶ 38.) Plaintiff also alleged that he "spoke out about how the administration did not provide leadership for the teachers and principals in the areas of curriculum and instruction. These opinions were later echoed by a group called upon to assess the School District, Columbia Associates [which] issued its report in or about May of 1995 ... criticiz[ing] the gap between the administration and the teachers and principals." (Amend. Compl. at ¶ 39.) Such public statements undeniably placed Plaintiff at odds with the policies and views of his employer.

Under these circumstances, the Second Circuit has instructed the district courts to "consider whether the statement sought to be protected impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships ... or impedes the performance of the speakers' duties or interferes with the regular operation of the enterprise." *Lewis v. Cowen,* 165 F.3d at 162 (internal quotations and citations omitted). These factors, which enable the court to gauge the impact of Plaintiff's speech on the regular and efficient operation of the School District, weigh decidedly in the Defendants' favor. The Second Circuit observed in its opinion reversing this court's denial of summary judgment in this case:

> appellants proffered evidence, uncontroverted by appellee, that appellee's speech caused disruption in the school district. Specifically, the speech caused hostility between appellee and various district employees, including principals and teachers. One principal asked to be relieved of the obligation to work with appellee. Moreover, appellants prof-

fered, again without contravention, that appellee's statements were 'likely to cause tremendous disruption to the functioning of the School District' because the comments were 'contrary to the goals established by the Board of Education.'

(Op.4.) On remand from the Second Circuit, Judge Platt ordered further discovery to determine "(a) whether the claimed threat of or actual disruption by plaintiff's speech was a sham and (b) whether the plaintiff was discharged by reason of illegal retaliation." (Op.2.) After additional discovery Plaintiff has submitted only the affidavit of Nathanial Jackson. Mr. Jackson states that "[a]t no time was there an actual threat of or actual disruption caused by [Plaintiff's] speech." (Aff.¶3.) Despite this conclusory statement, nothing in Mr. Jackson's affidavit controverts Defendant's evidence that Plaintiff's speech caused hostility between Plaintiff and various district employees; nothing, moreover, controverted Defendants' evidence that Plaintiff's comments were contrary to the goals of the Board of Education.

Under these circumstances, it cannot be said that no threat of disruption emerged as the result of public comments directed at and harshly critical of the highest level of a School District's administration by an Assistant Superintendent himself charged with formulating and carrying out the mandates of that administration. It is important to note, moreover, that it is not incumbent upon this court to determine whether Plaintiff's comments were well-intended, whether they were widely affirmed by outside individuals or groups, or even whether they ultimately had some salutary effect. Instead, this court is called upon to determine whether Plaintiff's speech is entitled to the protection it would otherwise necessarily receive in the absence of countervailing State interests. Because Plaintiff chose to criticize School District administrators in a manner that ran counter to his job description and undermined the ability of the administration

as a whole to carry out its responsibilities, this court cannot conclude that the School District's interest in the proper functioning of the enterprise should be subordinated to Plaintiff's right to free speech. The Second Circuit has made clear that no greater disruption is required for this court to find in a defendant's favor on the First Amendment issue under circumstances such as these:

> regardless of the content of the speech, the responsibilities of the employee, or the context in which the speech was made, an employer is never required to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action. The state need show only a likely interference with its operations, and not an actual disruption.

*Lewis v. Cowen*, 165 F.3d at 163 (internal quotes and citations omitted). Acknowledging the Second Circuit's concern lest State employers feel compelled to await, rather than anticipate, a disruption before averting it, and acknowledging the Second Circuit's concern in this case that Plaintiff's comments were "likely to cause disruption" because they put him at odds with the administration's goals, this court determines that Defendants have shown that Plaintiff's remarks caused, at a minimum, a "likely interference with its operations."

*III. Conclusion*

For the foregoing reasons, Defendants' motion for reconsideration is GRANTED, and Plaintiff's claim that the Defendants violated his First Amendment rights is DISMISSED.

It is SO ORDERED.