**John MATARAZA, Plaintiff,**

v.

**NEWBURGH ENLARGED CITY SCHOOL DISTRICT Defendant.**

and

**Philomena Pezzano, Mary Ann Joyce, both sued in their individual capacities, Proposed Defendants.**

No. 02 Civ.0113 CM.

United States District Court, S.D. New York.

Dec. 4, 2003.

Michael Howard Sussman, Thornton, Bergstein & Ullrich, LLP, Chester, NY, for Plaintiff.

Mark C. Rushfield, Shaw & Perelson, L.L.P., Highland, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER DENYING MOTION TO AMEND

MCMAHON, District Judge.

Plaintiff in this action originally asserted a claim of age discrimination in promotion. Apparently counsel has determined, after discovery, that no such claim can be sustained. However, instead of simply discontinuing his action, he seeks leave to amend his complaint, dismissing the age discrimination allegations, changing his theory of recovery to First Amendment retaliation, and adding individual defendants. Plaintiff alleges that he first learned in discovery that the real reason why plaintiff did not receive the promotion he sought was not his age, but as retalia-

tion for his expressed reservations about Newburgh's introduction of a curriculum alignment program. Defendant Newburgh Enlarged City School District ("NECSD") opposes plaintiff's effort to substitute a wholly new claim for his admittedly untenable original theory.

Because plaintiff's proposed new claim is fatally flawed, the motion to amend by substituting the Proposed Amended Complaint for the Complaint is denied.

## Background

The following facts are drawn from his Proposed Amended Complaint and are viewed most favorably to Plaintiff.

Plaintiff is an experienced building level administrator who has provided the NECSD with twenty years of service. He served as an Assistant Principal in the NECSD for ten years then as principal for the Middle School of Marlboro. (Proposed Am. Cmpl't. ¶ 4). For the past ten years, plaintiff was employed at the Gidney Avenue Memorial School ("GAMS") as a Program Specialist. (*Id.* ¶ 6). While serving as the Program Specialist, plaintiff developed and implemented the Gidney Avenue Memorial School's magnet program and gained strong support from parents and students at the school. (*Id.* ¶¶ 7–8).

As part of his job duties, plaintiff participated in and led committees dealing with issues of curriculum alignment.[1] In the course of these meetings, plaintiff expressed his concerns that the process of curriculum alignment would "eliminate instructional individuality," "demoralize faculty members," and might foster a habit of "teaching to the test" or other "educationally questionable methodologies." (*Id.* ¶ 10). Plaintiff states, however, that despite his reservations about the process of aligning school curricula with the State's

proposed curricula, he "fully implemented" the related tasks assigned to him and volunteered to assist the district in implementing curriculum alignment. (*Id.* ¶ 11). Specifically, plaintiff points to the fact that he successfully led one of the curriculum writing teams during the Summer of 1999 and participated in meetings during the following school year to implement his team's work product. (*Id.* ¶ 28). At the end of the 1999–2000 school year plaintiff again volunteered and led a team. (*Id.* ¶ 29).

In the Spring of 2001, NECSD abolished the Program Specialist position. (*Id.* ¶ 6). However, at that time NECSD also decided to appoint an assistant principal to serve in each of the schools effected by the decision to cancel the Program Specialist position. (Def. Mem. In Opp., 3). In June 2001, plaintiff applied for the position of Assistant Principal at GAMS. (Proposed Am. Cmpl't. ¶ 13). During the selection process, Carole Mineo, the principal of GAMS, expressed her support of plaintiff's promotion to this position. (*Id.* ¶ 14). But the proposed additional defendants, Superintendent Philomena Pezzano and Deputy Superintendent Mary Ann Joyce, advised Mineo that she would need to recommend someone other than plaintiff because he did not support district initiatives. (*Id.* ¶ 19).

On July 17, 2001, Joyce informed plaintiff that he had not been chosen as Assistant Principal because he did not support district goals. (*Id.* ¶ 16). Plaintiff was the only Program Specialist who had applied for the position of Assistant Principal who did not get the job. (*Id.* ¶ 15). In late July, NECSD appointed Melinda LaMarche as Assistant Principal of GAMS. Joyce and Pezzano had recommended that

---

1. Curriculum alignment refers to schools' efforts to revise the curriculum taught in each subject matter so that it would be consistent with New York State standards developed by the New York State Board of Regents.

the School Board appoint LaMarche because she "had always been very faithful to district initiatives." (*Id.* ¶ 37).

The instant action was filed in January 2002.

## Discussion

■ Leave to amend a pleading, even after discovery, should be liberally granted. Fed.R.Civ.P. 15(a). However, leave need not be granted if doing so would contravene a prior order of the Court (for example, an order setting a deadline for filing such motions) *cf. Commer v. American Fed'n. of State, County and Mun. Employees,* No. 01 Civ. 4260, 2003 WL 22671546, at *1 (S.D.N.Y. Nov. 12, 2003), or where amendment would be futile because the proposed new claim could not survive a motion to dismiss. *Oneida Indian Nation of New York v. City of Sherrill, New York,* 337 F.3d 139, 168 (2d Cir.2003); *Health–Chem v. Baker,* 915 F.2d 805, 810 (2d Cir.1990). Defendant contends that leave to amend should be denied on both grounds.[2]

This Court originally set a deadline date of April 26, 2002 for amendment of pleadings in this case. Originally, when plaintiff's counsel made an informal application (by letter) for leave to amend, defense counsel relied solely on this ground in opposition. Since Mr. Sussman represented that the information that led to the change of theory by plaintiff came from depositions that were taken well after the Court-imposed deadline for amendment, I was not and am not inclined to reject the motion on grounds of untimeliness, court-imposed deadline notwithstanding.

■ However, I previously indicated to counsel that I was unwilling to grant the motion if amendment would be futile, and asked that a formal motion be made on papers so I could consider all of the issues remitted to determination by the Court under the test set forth by the United States Supreme Court in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Pursuant to that test, a Court (not a jury) must determine both (1) whether the speech at issue was constitutionally protected speech or was purely personal to the plaintiff, and (2) whether the Government's interest in promoting the efficiency of the public services it performs through its employees outweighs the employee's right to speak out on the matters under discussion. Under the balancing test, the governmental employer may defeat the claim (or, in the present context, may demonstrate the futility of the amendment) by demonstrating that it "reasonably believed that the speech would potentially interfere with or disrupt the government's activities, and can persuade *the court* that the potential disruptiveness was sufficient to outweigh the First Amendment value of that speech." *Pappas v. Giuliani,* 290 F.3d 143, 146 (2d Cir.2002) (quoting *Heil v. Santoro,* 147 F.3d 103, 109 (2d Cir.1998))(emphasis added).

■ Plaintiff made his motion, asserting that his criticism of the Board's curriculum alignment program touched on a matter of public concern and was, therefore, constitutionally protected. The Court agrees— and defendant and the proposed defendants do not seriously dispute—that the subject of curriculum alignment was of the utmost public concern. *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Jeffries v. Harleston,* 52 F.3d 9, 12 (2d Cir.1995).

■ Furthermore, the record before me amply supports the proposition that Ma-

---

**2.** Defendant also contends that the individual defendants would be entitled to qualified immunity, but because I find that the complaint cannot be amended based on a *Pickering* balancing test, I need not reach that issue.

taraza was not promoted to the position of Assistant Principal because of his publicly-expressed opposition to the pace with which the District was implementing curriculum alignment. Indeed, as plaintiff pleads, proposed defendant Joyce, a Deputy Superintendent in the District, advised plaintiff that he had been rejected for promotion because he did not support district goals. (Proposed Amended Cmpl't. at ¶ 16). No one questions that curriculum alignment was the goal that defendant allegedly did not support—or at the very least criticized, on the ground that it would promote teaching to tests, minimize creative activity among teachers and demoralize faculty. (*Id.* at ¶ 10). Plaintiff not only does not dispute having made those critical comments, he pleads them and highlights them in his papers (see, e.g., Plaintiff's Reply Brief at 2).

But there is a third component to the *Pickering* balancing test: whether it was reasonable for the Newburgh School District and its officials to believe that promoting Mataraza to the position of assistant principal in the face of his publicly-expressed opposition would disrupt the District's ability to deliver services. Whether or not amendment is futile turns on the answer to that question.

■ First, however, I address plaintiff's suggestion, made in his reply brief, that now is not the time to answer the third Pickering question. Plaintiff's suggestion is off the mark. It is the Court, not the jury, that performs the *Pickering* balancing test; and it is the Court that permits or denies leave to amend. Therefore, the Court is well within its rights to insist that the *Pickering* issues be litigated in the context of deciding whether or not leave to amend would be futile. I advised counsel that this was what I intended to do: in my letter dated October 22, 2003, I said, "Since it is the province of the Court to perform the *Pickering* balancing test, and since I am not inclined to allow an amendment to assert a claim that would be stricken if the *Pickering* test were done, I think Mr. Sussman should prepare a real motion, with his proposed amendment attached, and Mr. Rushfield should respond to the motion on the merits. I will then strike the *Pickering* balance test and either allow the amendment or disallow it on the ground of futility rather than untimeliness." So, plaintiff's suggestion that it is not appropriate to address now the reasonableness of the District's belief that his speech made him an undesirable candidate for a senior administrative position is off the mark.[3]

■ Also off the mark is plaintiff's argument, based on the Fifth Circuit case *Harris v. Victoria Independent School District,* 168 F.3d 216, 221–22 (5th Cir.1999), that defendants must demonstrate that plaintiff's speech actually disrupted the school's operation or performance before I could find that amendment was futile. (See Plaintiff's Brief at 4–5). While actual disruption may be the standard that prevails in performing the *Pickering* balancing test in the Fifth Circuit (though that would appear unlikely in view of the Supreme Court's opinion in *Waters v.*

---

**3.** In view of the Court's straightforward announcement that I would strike the *Pickering* balance in order to decide whether amendment was or was not futile, plaintiff's decision not to submit an affidavit—either in support of the motion or in reply to Newburgh's responsive papers—is difficult to understand. However, it is easy to deal with the question without penalizing plaintiff for his failure to submit evidence. For purposes of this motion, I rely solely on the statements that plaintiff affirmatively pleads in the Proposed Amended Complaint and plaintiff's motion papers, putting on them the gloss most favorable to plaintiff. I do not consider other statements proffered by defendants, which Mr Sussman, on behalf of his client, denies.

*Churchill,* 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (the government need only "make a substantial showing that the speech is ... likely to be disruptive .....")), it is most certainly not the standard in this Circuit. As Judge Leval stated in *Pappas v. Giuliani,* 290 F.3d at 151, "A governmental employer's right to discharge [or, in this case, not to promote] an employee by reason of his speech in matters of public importance does not depend on the employer's having suffered *actual* harm resulting from the speech. The employee's speech must be of such nature that the government employer reasonably believes that it is likely to interfere with the performance of the employer's mission." (Emphasis in original).

It is noteworthy that the only case from this Circuit that plaintiff cites to support the proposition that the Government must demonstrate actual interference of speech with governmental operation—*Lewis v. Cowen,* 165 F.3d 154, 162 (2d Cir.1999)—is referred to with a "Cf." That would be because *Lewis* does not conflict with *Waters* and *Pappas.* Rather, in *Lewis,* the Second Circuit relied on *Waters* to support its conclusion that plaintiff's speech would "likely interfere" with the operation of the lottery commission. The Court of Appeals held that defendant's "predictions of disruption were not unreasonable," since plaintiff was the public face of the lottery, and bad publicity would arise if he were not on board with certain changes of which he was critical. *Id.* at 157–158. It further ruled that the state has the burden to show "only a likely interference with its operations, and not an actual disruption." *Id.* at 163 (citations and quotations omitted).

Thus, the correct issue for *Pickering* purposes is whether the record before me reveals that the defendant and potential defendants reasonably (i.e., objectively, not subjectively) believed that Matараza's views on curriculum alignment, as reflected in his public statements, made him unsuitable (or at least less suitable than others) to be an assistant principal in a school district where his expressed views were critical of district policy.

The question answers itself.

■ There can be no dispute that an assistant principal is a senior administrator in a school system. No one has suggested, and I could not possibly conclude, that an assistant principal is not a high level employee who occupies a "supervisory," "confidential," "policymaking," or "public contact" position. *Rankin v. McPherson,* 483 U.S. 378, 390–391, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). Defendant's interest in filling that position with a person who fully supports its policies, rather than with someone who criticizes aspects of them publicly, is correspondingly high. *McEvoy v. Spencer,* 124 F.3d 92, 103 (2d Cir.1997). Thus, ill-considered public statements by a high policy-making executive (or someone who aspires to such a position) have a higher likelihood of sending a "mixed message" and harming the employer's accomplishment of its mission than would a similar expression from a lower-level employee. *Pappas, supra.,* 290 F.3d at 148.

Here, plaintiff contends in his proposed amended complaint that the district's assertion that he did not support its initiatives is "false." (Plaintiff's Brief at 2–3). However, the statements that plaintiff affirmatively pleads to making—statements about how curriculum alignment would minimize creativity, demoralize faculty, and "teach to the test" (a controversial proposition in our society), as well as reservations about the pace of the district's program and the staff's capacity to implement it properly (Proposed Am. Cmpl't ¶ 10)—are precisely the sort of remarks that could cause a reasonable employer to

conclude that the maker was not whole-heartedly "with the program," and that he might well become either the focal point of dissent and/or a sympathizer with dissenters.

Plaintiff's only response to the argument that his remarks opposing aspects of the District's curriculum alignment policy were likely to prove disruptive is to assert that this belief was unreasonable opposition had not in fact caused any disruption to date, or interfered with his performance of his job. As discussed above, whether plaintiff had actually caused disruption is not the test. Similarly, the fact that plaintiff had participated in curriculum alignment-related tasks in the past does not mean that the District's apprehension over having a critic of aspects of its policy in a senior administrative position was unfounded or unreasonable. Indeed, the Second Circuit has opined that high-level public employees are " 'unlikely' to prevail under the *Pickering* balancing test when they have engaged in speech that is critical of their employer" because the "likelihood of disruption" to the organization outweighs the employees' right to speak. *McCullough v. Wyandanch Union Free School District*, 187 F.3d 272, 279 (2d Cir. 1999) (quoting *McEvoy v. Spencer*, 124 F.3d 92, 103 (2d Cir.1997)). A person who has reservations about a policy to which a governmental entity has committed ought not be surprised when he is not entrusted with the job of carrying out that policy. *Lewis, supra.*, 165 F.3d at 165 (termination of lottery unit chief whose job was to communicate with the media was proper after he refused to present Board approved changes to Gaming Commission and spoke out against the newly approved lotto policies); *McCullough v. Wyandanch Union Free School District*, 132 F.Supp.2d 87 (E.D.N.Y.2001) (school district's interest in harmony outweighed assistant superintendent's right to publicly criticize school policies and termination of assistant superintendent did constitute improper retaliation).

In striking the *Pickering* balance in this case, I assume, as the Proposed Amended Complaint alleges, that plaintiff did in fact perform his duties in spite of the reservations he had expressed about the curriculum alignment policy. That fact, however, does not compel the district to hire a critic of its policy into a senior administrative position.

Plaintiff repeats several times that the person with whom he would have worked most closely as Assistant Principal, Principal Carol Mineo, strongly supported his promotion. That Mineo, a long-time co-worker with plaintiff in the GAMS School, wanted to see plaintiff promoted is not surprising, but it is beside the point. The "reasonable belief" test, like all "reasonable man" tests, is objective in nature, not subjective. *McCabe v. Sharrett*, 12 F.3d 1558, 1572 (11th Cir.1994) (employer's objectively reasonable fear of disruption sufficient to outweigh employees first amendment associational rights); *see also, Heil*, 147 F.3d at 109 ("government can prevail if it can show that it reasonably believed that the speech would potentially interfere with or disrupt the government's activities"). Its gravamen is not whether an actual person like Mineo believes that plaintiff's publicly expressed views would not prove disruptive, but rather whether it was reasonable for a school district in defendant's position to conclude that putting plaintiff in an assistant principalship, in view of his expressed reservations about the new policy, was likely to prove disruptive. *Cf., Curry v. City of Syracuse*, 316 F.3d 324, 336 (2d Cir.2003) (officer not entitled to qualified immunity where officer failed to establish that "no reasonable officer in [his] position" would have believed it was lawful to arrest individual for drug possession); *Stanley v. Cooper*, 996

**490**

F.Supp. 316, 321 (S.D.N.Y.1998) (to be deprived of the defense of qualified immunity, a public official must not simply violate plaintiff's rights; rather, the violation of plaintiff's rights must be so clear that no reasonable public official could have believed that his actions did not violate such rights.) As a matter of law, there was nothing unreasonable about defendants' belief.

So even though plaintiff was denied promotion because he had expressed his reservations about the curriculum alignment policy (and there is no question that he was), under *Pickering* he cannot maintain a claim of First Amendment retaliation. "The effective functioning of entities of government could be seriously undermined by its employees' unrestrained declarations of their views. For this reason, the employee's right of free speech is sometime subordinated to the interest of the effective functioning of the governmental employer." *Pappas, supra.*, 290 F.3d at 146. Whether to promote a vocal critic of Newburgh's curriculum alignment policy to a senior administrative position in a school affected by the new policy is, as a matter of law, a decision as to which an employee's right of free speech can be subordinated to the interest of the effective functioning of the school district without offending the Constitution.

The motion for leave to amend is denied on the ground that amendment would be futile, since plaintiff's claim would be dismissed upon application of the *Pickering* balancing test.

I gather that plaintiff does not wish to pursue his age discrimination claim. If the parties submit a stipulation to that effect, as required by Fed.R.Civ.P. 41, I will sign it and dismiss this action.